THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* GEORGE A. B. PFUHL, Respondent.

*Opinion filed October 24, 1916.*

1. EVIDENCE—*when it cannot be contended that the testimony is equally balanced.* Where the testimony of two witnesses is conflicting but there are inherent evidences of the truth of the statement of one witness while the contradictory statement of the other is unreasonable or carries with it suspicion, doubt and disbelief as to its sincerity and truth, it cannot be contended that the testimony is equally balanced nor that there is no preponderance of the evidence.

2. DISBARMENT—*when attorney is guilty of betrayal of client's confidence.* An attorney of experience is guilty of a betrayal of the confidence of his client and a lack of care to protect her property if he advises her to loan her money on an unsecured note, with the result that it is lost, where the client was an ignorant foreigner, whose knowledge of English and experience in business affairs were very limited and who relied on the attorney's representation that the money had been loaned on a real estate mortgage.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

WILLIAM J. MOORE, for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

Relator, the Chicago Bar Association, upon leave given, filed an information in this court seeking the disbarment of respondent, George A. B. Pfuhl, as a member of the bar of this State. The information contains but one count, which count charges respondent misappropriated the sum of $1000 intrusted to him by Mrs. Lena Kozla. Respondent answered denying the charge, and the case was referred by this court to Roswell B. Mason, a master in chancery of the circuit court of Cook county, as special commissioner, to take the proofs and report the same, together with his conclusions based thereon. The commissioner reported the

evidence, with his conclusion that the same supported the charge in the information.

The proof taken and reported by the commissioner consists principally of the testimony of Mrs. Lena Kozla and respondent. About the year 1896 respondent was employed as an attorney to attend to the probate and settlement of the estate of Frank Kozla's father. Frank Kozla is the husband of Lena Kozla and received from the estate about $3500. His occupation was that of a butcher, and his wife, Lena, appears to have attended to the business in his place. The money received from the estate was put in a safety deposit box by Mrs. Kozla for safe keeping. The Kozlas bought some property in Hammond, Indiana, and paid for it out of the $3500. Respondent attended to having the abstract of title brought down to date for the Kozlas and assisted them in concluding the transaction for the purchase of the property. Mrs. Kozla testified that some time afterwards respondent asked her how much money they had left, and that she told him, and he asked her what they would do with it. She said they would loan it if they could get a good loan on a first mortgage. Through respondent they loaned a man by the name of Hayes $1200, which was secured by a mortgage accompanied by an abstract of title. Mrs. Kozla put the note, mortgage and abstract in a safety deposit box, where they were kept until the loan was paid off, when the trust deed was released by respondent, who was the trustee. Afterwards respondent told Mrs. Kozla he had a good personal friend who had a feed store on the north side who wanted to borrow some money. Mrs. Kozla told him they had $1000 they could loan on a first mortgage, and respondent said the loan would be made on a first mortgage. The name of the alleged borrower was Schultz, and Mrs. Kozla took the money from the safety deposit box and turned it over to respondent to make the loan. He afterwards turned over to Mrs. Kozla principal and interest notes executed by Schultz for $1000, the principal

payable in five years, interest semi-annually, together with a paper or papers which he represented to be and which Mrs. Kozla understood was a first mortgage. She testified the abstract respondent showed her was in a bound book and was left by her with respondent because it was bulky and she could not keep it in her safety deposit box. The papers respondent gave Mrs. Kozla she said were like those he gave her when the loan was made to Hayes, and respondent said she would have to give the papers to the borrower every year when he paid the interest. The witness did not examine the papers but put them in her safety deposit box in the vault of a safety deposit company. Respondent told the witness that at any time she wanted the money she could foreclose the mortgage. When the interest became due Mrs. Kozla testified she went to the vault, took out one interest paper and took it to respondent to get her interest. He said he had not seen Schultz and witness took the paper back to the safety deposit box. After another installment of interest became due she took the coupons to respondent again and he gave her $60. Witness then told respondent her husband was not very well satisfied with the loan. Respondent said the borrower was his personal friend and that the loan was safe. No further payment was made to the Kozlas on this loan. She testified she saw respondent a number of times succeeding the time this $60 interest was paid and he would always say the money was safe,—that the borrower was his personal friend and that the loan would be paid. After the maturity of the loan respondent told Mrs. Kozla he would foreclose the mortgage if she would get the papers for him. She got the papers, turned them over to respondent and was told by him to come to see him in two weeks. When she went to see him the respondent told her he had not seen Schultz, and afterwards sent to Mrs. Kozla his personal note for the amount of the loan. She testified respondent said he had foreclosed the mortgage. Mrs. Kozla took this

note back to respondent and told him her husband said he was not satisfied with it. Respondent said the note was as good as money and that the Kozlas should not worry about it. Mrs. Kozla returned home with the note. She afterwards visited respondent and protested they did not want a note which was not secured by a first mortgage, and respondent said he would send a different note before the first one was due, which was six months after its date. He afterwards sent Mrs. Kozla another note by mail. She again visited respondent with both notes, gave him the first one executed and he tore it up. She kept the second note. The second note was also the unsecured personal note of respondent. Mrs. Kozla testified she always told respondent she and her husband were not satisfied with his notes, and he always told her the note was as good as money,— that he expected the money from Schultz every day. Mrs. Kozla testified that in moving, the second note given by respondent was lost and he gave another note in its place. When that note was due it was placed in the hands of an attorney for collection and a judgment taken against respondent on the note. This was in 1914, and the judgment remains unpaid. Mrs. Kozla testified respondent told her the Schultz loan was secured by property on the north side,—a feed store. She never saw Schultz nor heard from him except what respondent said. Mrs. Kozla testified she paid respondent for his services in making the loans.

There is no substantial controversy except as to the so-called Schultz or Schultz & Carlson loan. Respondent testified that after the Hayes loan was made Mrs. Kozla told him her husband was not satisfied with the amount of interest, which was six per cent; that he had heard they could get a better rate of interest on small loans. Mrs. Kozla talked with him about short-time loans for one, two or six months and said she understood a higher rate of interest could be obtained on such loans. Respondent said he knew nothing about that or the security that could be obtained

for such loans.  Mrs. Kozla said she had some money her husband knew nothing about; that he was drinking and disagreeable and she would like to loan the money.  Respondent said he would keep the matter in mind and let her know if he found an opportunity to loan it.  About two weeks later he sent for her and told her he had a customer for a loan by the name of Charles Schultz; that he was a contractor and claimed to own certain excavating machinery and concrete-mixing machinery; that respondent would investigate to see if he did own it, which respondent believed was good security for the amount of the loan desired.  Respondent testified he investigated Schultz and his property; that Schultz wanted $1000 for about sixty days, which he would pay out of the first estimate of work on a $40,000 contract he had with the Wisconsin Railroad Company, and he was willing to pay a liberal rate of interest.  Upon reporting this to Mrs. Kozla she asked respondent what he knew about Schultz, and respondent told her he had known him about two months and that he appeared to be substantial and all right.  Mrs. Kozla asked how much he was willing to pay, and respondent told her he thought $50 or $60.  Mrs. Kozla told respondent if he thought it was all right, to make the loan.  Respondent told her it was taking a chance, but if she was going to make loans of that kind he thought Schultz absolutely good and that unless something unforeseen happened he would be able to pay the loan when due.  The loan for $1000 was made on a sixty-day note and the money turned over to Schultz.  Respondent testified Schultz gave no security for the loan,—that he simply gave his own note; that shortly afterwards Schultz paid the note off and paid $60 for the use of the money.  Respondent notified Mrs. Kozla he had the money and requested her to come and get it.  When she came she said she would take the $60 and if respondent had a chance to loan the $1000 he could let her know.  About a week later she came to respondent's office and he told her that the

same Schultz and one Carlson had been to see him; that
Carlson had a big excavating contract at Cedar Rapids,
Iowa, and he and Schultz were figuring on doing the work
together. Respondent told Mrs. Kozla who Carlson was;
that he was associated with a man who was a civil engi-
neer; that they were dissolving partnership and Carlson
was going in with Schultz because Schultz had the machin-
ery needed for the work at Cedar Rapids. The respondent
talked the matter over with Mrs. Kozla, and she told him
he could do what he thought was right about making a loan
of $1000 to Schultz & Carlson. Respondent made the loan
and took a judgment note of Schultz & Carlson. He tes-
tified that a week or so afterwards he told them that as
they were taking some of the property out of the State
they ought to give a bill of sale on it to secure the loan,
which they did; that respondent told Mrs. Kozla about it
and gave her the note and bill of sale. Nothing was ever
paid on the note. Respondent testified he endeavored to
locate the borrowers and collect the money but that they
went out of the State. Schultz afterwards died and all
trace was lost of Carlson. Some of the property which
he said was covered by the bill of sale was sold on a
judgment in favor of some parties in St. Charles, Illinois,
for money advanced Schultz, and the other machinery was
taken out of the State and disappeared or was rendered
valueless by use and neglect. Respondent testified he kept
Mrs. Kozla informed of his efforts and of their results.
Mrs. Kozla frequently complained to respondent about the
loss of the money and said her husband was dissatisfied,
and asked respondent to give her some paper to show to
her husband. Respondent gave her his personal note and
said he would pay it as soon as he could after he was
through with the expense of caring for his sick wife, and
that he did this because it was through his recommenda-
tion that Mrs. Kozla lost her money. He testified she went
away satisfied. The note was due in one year, and re-

spondent testified it was not until the note became due that Mrs. Kozla began to complain; that she then told him he was not doing any better than the other parties, and respondent offered to give her a new note in place of the old one, and did so. Afterwards she told respondent they had moved and the note was either lost or destroyed and asked that he give her another note, which he did, and that was the note upon which she took judgment against respondent. Respondent testified Mrs. Kozla brought him the Schultz & Carlson note and bill of sale and left them with him but that she never talked with him about a foreclosure with reference to the loan; that during his absence from his office for a considerable period of time during the illness of his wife the agent of his landlord took possession of the property and effects in his office, and he was never able after that to find the note and bill of sale although he had made diligent search and inquiry. Respondent further testified he never received anything out of the $1000 loan unless $50 paid him by Carlson for legal services in preparing a contract for the Cedar Rapids work was paid out of that loan; that he never heard of a feed store on the north side in connection with the loan until the hearing before the grievance committee of the Chicago Bar Association. He denied telling Mrs. Kozla there was an abstract in connection with the loan or that the abstract was in a book in his office. He denied telling Mrs. Kozla his note was as good as money. He further testified that, according to his best recollection, about the time his first personal note became due Mr. and Mrs. Kozla called together to see him and Kozla told him his note was due and he had not paid it. Respondent replied he was in no position then to pay it but promised to do so. Kozla charged respondent with fooling him and his wife, charged that he knew where the borrowers were, and if he could not get the money from them he could borrow it from someone else. Respondent denied that he charged or received any compensation for

the loans made for the Kozlas.  He testified he never examined the records to ascertain if there were any chattel mortgages or liens against the property he took the bill of sale for; that it was intended the property should remain in the possession of the owners, and that he never recorded the bill of sale because he knew the property was to be taken out of the county, and that he explained the matter to Mrs. Kozla.

The agent of the owner of the building where respondent's office was, testified that property, including a desk and papers, was taken out of the office of respondent on a bill of sale or distress warrant for the rent which was unpaid and was stored in a basement, and it was not very well preserved or protected and he thought some of the things taken decayed or were destroyed.

In rebuttal, Mrs. Kozla denied all conversation or statements respondent testified he had with or made to her concerning Schultz & Carlson and the machinery.  She testified the first she ever heard of a chattel mortgage or bill of sale was at the hearing before the grievance committee of the bar association.  She denied respondent ever talked to her about hunting for Schultz & Carlson, and it was admitted she would deny all conversations testified to by respondent except as testified to, in substance, by her when previously on the witness stand.

Eugene Shubart testified he knew a man by the name of Carlson; that Carlson owed him some money but disappeared and he was unable to locate him; that while he was trying to find his whereabouts he communicated with the respondent, who said he was also looking for Carlson, and they agreed if either located him the other should be notified.

Whether the charge in the information that respondent betrayed the confidence of his clients and converted to his own use the money entrusted to him to loan depends largely upon the testimony of Mrs. Kozla and respondent.  Counsel

for respondent insists that under the rule announced by this court in cases of this character, to justify the destruction of a lawyer's professional life by his disbarment the proof must be clear and satisfactory not only as to the act charged but also as to the motive, and in this case it is claimed there is no preponderance of evidence on the side of the relator but that it is equally balanced, the merits of the controversy depending upon the testimony of Mrs. Kozla and respondent, which is conflicting. It does not necessarily follow that where one party testifies to one state of facts and another to a contradictory state of facts the evidence is equally balanced or that there can be no preponderance of testimony. If there appears to be inherent evidences of the truth of one statement and the contradictory statement is unreasonable or carries with it suspicion, doubt and disbelief as to its sincerity and truth, it would be entitled to little or no credit and weight. Respondent is a lawyer of sixteen years' experience. Mrs. Kozla is a Bohemian. She came to this country when two years of age and attended a Bohemian school a short time when very young. She can read English a little and write her own name but her understanding of the English language is limited, and it is apparent that she and her husband are quite unfamiliar with such business transactions as loaning money on real estate security. The extent of Mrs. Kozla's knowledge appears to have been that she considered a first mortgage on real estate good security, but she appears to have been entirely ignorant of the nature and form of a mortgage or of an abstract of title to real estate. She only knew that she was willing to loan the little money they had on the security of a first mortgage on real estate, and it is apparent she depended upon respondent to attend to getting the mortgage on property owned by the borrower and accepted his statement upon this subject. It is inconceivable that respondent was not aware of her lack of knowledge of such business transactions and of her dependence upon him. About the

time the $1000 loan was supposed to have been made respondent was, according to his own testimony, financially embarrassed. His explanation of the loan and the security he took is not satisfactory. His description of the men to whom he claims to have loaned the money, at first without any security, and the security he afterwards took, according to his own story shows such lack of care and interest in protecting his clients as to deprive his statements of any credit. He claimed the $1000 was first loaned to Schultz on his personal note, and that all he knew about Schultz was he was a contractor and had some machinery for use in that work. He thought Schultz was a nice fellow and that he would pay the note, which he claims he did, whereupon he re-loaned it to Schultz & Carlson. The only thing Carlson appears to have had was a contract for excavation work at Cedar Rapids, Iowa. Respondent testified the only security given for the loan at the time it was made was the personal note of Schultz & Carlson. When he later took a bill of sale on the Schultz excavating machinery he did not record it. It was understood between him and Schultz & Carlson that the property was to remain in their possession and that they would take it out of the State. He claims all this was explained to Mrs. Kozla and she denies any such explanation was ever made to her. He explains his giving the Kozlas his own personal note on the ground that he felt that he had been negligent in the transaction and was under some moral obligation to them.

Upon a consideration of the testimony of the parties we are unable to say it does not warrant the conclusion that Mrs. Kozla told the truth and that the respondent betrayed the confidence of his clients and converted the proceeds of the Schultz loan to his own use.

The rule will be made absolute and respondent's name stricken from the roll of attorneys.

*Rule made absolute.*